Mark K. Schonfeld (MS-2798)
Regional Director

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center
New York, NY 10281
(212) 336-1020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------- :

SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

      v.

WORLD INFORMATION TECHNOLOGY, INC.,
GARY MORGAN, IRA DICAPUA, AND
STEVEN SIRIANNI

                Defendants.

--------------------------------------------------------------------------- :



    06 Civ. _____

    **COMPLAINT**

## PRELIMINARY STATEMENT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

defendants World Information Technology, Inc. ("World Information"), Gary Morgan

("Morgan"), Ira Dicapua ("Dicapua"), and Steven Sirianni ("Sirianni"), (collectively, the

"Defendants"), alleges as follows:

    1.      This case concerns a scheme by the Defendants to "pump-and-dump" the stock of

World Information.

    2.      In early 2003, Morgan and others working with him ("Morgan's Group")

purchased a publicly-traded shell company and merged it with World Information Technology,

Inc. ("World Info China"), a Taiwanese-based company controlled by a member of Morgan's Group. The company then issued more than 13.8 million shares to entities controlled by Morgan's Group.

3.      In August 2003, Morgan became World Information's CEO and Chairman. In order to increase the price of World Information stock, Morgan made false and misleading statements in public filings and press releases about World Information. For example, Morgan falsely stated that World Information had received a "firm commitment" for $20 million in funding. Morgan also failed to disclose his beneficial ownership and control of World Information stock.

4.      Morgan's false and misleading statements significantly increased World Information's stock price. For example, World Information's stock price increased from an average price of $2.245 to $4.527 per share following Morgan's interview with an on-line marketing firm in which he made false statements about World Information's funding.

5.      In order to create demand for World Information stock, Morgan arranged to pay brokers kickbacks to sell World Information stock to customers. Morgan paid Dicapua, a consultant engaged to promote securities among brokers, approximately $117,500. Dicapua then paid Sirianni, a stock broker for a registered broker-dealer, approximately $75,800 to solicit purchases of World Information stock from his customers and to purchase shares in his own account.

6.      Morgan sold approximately 300,000 shares of World Information and received approximately $866,000 in illicit trading profits.

7.     All of the Defendants, directly or indirectly, have engaged in transactions, acts, practices and courses of business which constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].  World Information, directly or indirectly, has engaged in transactions, acts, practices and courses of business which constitute violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. 240.12b-20, 240.13a-1, and 240.13a-13].  Morgan, directly or indirectly, has engaged in transactions, acts, practices and courses of business which constitute violations of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)], Sections 13(d) and 16(a) of the Exchange Act [15 U.S.C. §§ 78m(d) and 78p(a)] and Rules 12b-20, 13a-14, 13d-1, 13d-2, and 16a-3 thereunder [17 C.F.R. 240.12b-20, 240.13a-14, 240.13d-1, 240.13d-2, and 240.16a-3].  By virtue of the conduct described herein, Morgan is liable, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], as an aider and abettor of World Information's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-13 thereunder [17 C.F.R. 240.12b-20 and 240.13a-13].  Sirianni, directly or indirectly, has engaged in transactions, acts, practices and courses of business which constitute violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

8.     Unless restrained and enjoined by this Court, the Defendants will continue to engage in the transactions, acts, practices, and courses of business described herein, and in transactions, acts, practices, and courses of business of a similar type and object.  By this action,

the Commission seeks permanent injunctive relief against all of the Defendants, disgorgement and civil penalties from Morgan, Dicapua, and Sirianni, and an officer and director bar against Morgan.

## JURISDICTION AND VENUE

9.     The Commission brings this action pursuant to Sections 20(b), 20(d), and 20(e) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77t(e)] and Section 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1].

10.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1) and 77v(a)] and Sections 21(d), 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa].

11.     In connection with the transactions, acts, practices, and courses of business described in this complaint, each of the Defendants, directly or indirectly, has made use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange.  Certain of the transactions, acts, practices, and courses of business occurred in the Southern District of New York, including, among other things, the wire transfer of $51,000 from Morgan to Dicapua in connection with the kickback scheme though a bank located in the Southern District of New York.  In addition, Morgan participated in an interview with an online marketing firm located in the Southern District of New York in which he disseminated false and misleading statements about World Information's funding prospects.

## THE DEFENDANTS

12.     **World Information**, a Nevada corporation with its office located in New York,

4

New York, was formerly known as EZ Travel.  Its stock is registered with the Commission

pursuant to Section 12(g) of the Exchange Act, and was quoted on the OTC-Bulletin Board

between December 2002 and March 2004.  Since March 25, 2004, World Information stock has

been quoted on the Pink Sheets; however, Pink Sheets recently discontinued the display of

quotations for World Information stock because the company has failed to make available certain

public information.  World Information purportedly is in the business of providing on-line

shopping channels in China and Taiwan.  World Information is delinquent in its periodic filings

with the Commission and has not filed any reports with the Commission since August 2, 2004,

when it filed its Form 10-K for the year ended December 31, 2003.  On March 16, 2006, the

Commission issued an order suspending trading in the securities of World Information pursuant

to Section 12(k) of the Exchange Act for a period of ten days.  On November 8, 2006, a

Commission Administrative Law Judge issued an order pursuant to Section 12(j) of the

Exchange Act revoking the registration of each class of securities of World Information

registered pursuant to Section 12 of the Exchange Act.

13.    **Morgan**, age 49, is a resident of Boca Raton, Florida, and was World

Information's Chairman and CEO from August 12, 2003, until January 27, 2004.  Throughout

2003, Morgan, directly and through Morgan's Group, controlled a majority of World Information

stock.

14.    **Dicapua**, age 46, is a citizen of the United States and a resident of Ontario,

Canada.  Dicapua also owns a residence in Boca Raton, Florida.

15.    **Sirianni**, age 57, is a resident of Wausau, Wisconsin.  Between March 2003 and

October 2004, Sirianni was a stock broker with Berthel, Fisher & Company Financial Services,

Inc., a registered broker-dealer located in Wausau, Wisconsin.

## FACTS

**A.    Morgan Obtains Control Over World Information**

16.    In November 2002, Morgan negotiated a deal to purchase virtually all the shares

of EZ Travel, a shell corporation.  Between November 2002 and April 2003, Morgan paid

approximately $284,000 for 3.34 million of EZ Travel's 3.6 million outstanding shares.

Morgan's Group placed these shares with their nominees.

17.    In March 2003, after purchasing these shares, Morgan's Group merged World Info

China (a private Taiwanese corporation controlled by a member of Morgan's Group) into EZ

Travel and changed its name to World Information.

18.    On August 12, 2003, World Information appointed Morgan as its CEO and

Chairman, and he remained as CEO and Chairman until January 27, 2004.

19.    Morgan failed to disclose his acquisition, as part of Morgan's Group, of the

majority of the outstanding shares of World Information stock in his own name (and the names

of his own nominees).  Moreover, while acting as CEO and Chairman of World Information,

Morgan had an obligation to disclose to the Commission his beneficial ownership of World

Information stock and any change in such ownership.  Morgan failed to make these required

disclosures.

**B.    World Information And Morgan Made False And Misleading Statements**

20.    While serving as World Information's CEO and Chairman, Morgan knowingly

6

made false and misleading statements in World Information's press releases and Commission filings.  Morgan made these false and misleading statements to inflate artificially World Information's stock price because, at the time, he was selling his own World Information stock to the investing public.

21.    Morgan signed two misleading World Information Forms 10-Q.  On August 19, 2003 and November 25, 2003, Morgan certified and signed Forms 10-Q for the periods ended June 30, 2003, and September 30, 2003, respectively (collectively, the "Forms 10-Q"), and thereafter caused World Information to file them with the Commission.  The Forms 10-Q were misleading because World Information did not disclose that Morgan and Morgan's Group had acquired a majority of World Information's outstanding shares in the first half of 2003.

22.    Morgan also made false public statements regarding World Information financing agreements.  On November 14, 2003, Morgan prepared and caused World Information to issue a press release, which stated that the World Information "has received a firm commitment for more than $20 Million of private funding to support the acquisition of unlisted state-owned China companies."  The release also stated that World Information expected "to close the funding and disclose the details within the next ten business days."  In the November 14, 2003 press release, Morgan was quoted: "We have been very outspoken about our plan to make acquisitions to complement our online shopping channels and increase our product offerings.  With the closing of this funding combined with the improved regulatory environment, we have the opportunity to acquire some targeted entities that will accelerate our business plan and expand our market depth. We are very active in our negotiations with some entities that can meet our criteria and these

regulatory policy statements are very timely."

23.     On November 25, 2003, in its Form 10-Q for the period ended September 30, 2003, and in a December 21, 2003 press release, World Information again referred to a "firm commitment" of $20 million in private funding.  Morgan signed, and certified the accuracy of, the September 30, 2003 Form 10-Q, and he prepared and authorized World Information's December 21, 2003 press release.

24.     The November 14, 2003 press release, the December 21, 2003 press release and the September 30, 2003 Form 10-Q were false and misleading because World Information never had a firm commitment for $20 million of private funding.  Rather, on November 6, 2003, Morgan, on behalf of World Information, signed an agreement with another company ("Company A"), in which Company A agreed to provide $16 million of funding only on a best efforts basis. Morgan knew, or recklessly disregarded, that World Information never had a firm commitment for $20 million in funding.

25.     On January 12, 2004, Morgan gave an interview with CEOcast, Inc., an on-line marketing firm that, for a fee, distributes information regarding various public companies to the public by email.  Morgan caused World Information to pay CEOcast to conduct the interview and distribute it to thousands of email addresses.  CEOcast also placed an electronic version of the interview on its website.  During the CEOcast interview, Morgan reaffirmed his prior statement that World Information had received a $20 million firm commitment financing.  Morgan also said that World Information was using the funds to acquire state-owned Chinese companies. These statements were false because World Information never entered into a firm commitment

financing and never received any funds from Company A.

26.    Following CEOcast's distribution of emails relating to World Information the company's stock price and trading volume increased significantly.  During January 2-9, 2004 (before the interview), World Information traded on an average daily volume of 153,052 shares, at an average price of $2.245 per share.  On January 12, 2004, the day of the CEOcast, World Information stock volume rose to 310,339 shares traded, and its price climbed to $3.20 per share. During January 13-16, 2004, World Information stock traded at an average daily volume of 1,892,386 shares and at an average price of $4.527 per share.

**C.    Morgan Bribed Dicapua, Who Bribed Sirianni, A Stock Broker**

27.    To create additional demand in World Information's stock, Morgan entered into an illicit bribery scheme with Dicapua.  Specifically, Morgan paid Dicapua undisclosed compensation to create artificial demand in World Information stock.  Morgan knew that Dicapua would use some of the money to pay brokers to solicit purchases of World Information stock from the investing public.  In furtherance of that scheme, Dicapua paid Sirianni undisclosed kickbacks for soliciting his customers to buy World Information stock.

28.    Shortly after Morgan became World Information's CEO and Chairman in August 2003, Morgan asked Dicapua to create demand for World Information's stock by using Dicapua's broker "network."  In return, Morgan agreed to pay Dicapua $25,000 per month for his efforts in creating this demand.  Between October 15, 2003, and January 14, 2004, Morgan paid Dicapua approximately $117,500.

29.    Dicapua wrote Morgan a letter to confirm receipt of the first payment and stated:

9

"Our marketing efforts are to create retail awareness of and exposure to the opportunity your company's stock presents . . . . Our broker network consists of people we have established strong relationships with."

30.     Between October 16, 2003, and March 5, 2004, Dicapua paid Sirianni a total of $75,800 in undisclosed compensation to solicit purchases of World Information stock.  Between August 25 and December 24, 2003, Sirianni solicited purchases of World Information stock from twelve brokerage customers.  During that period, Sirianni and Dicapua held conference calls with Sirianni's customers during which Dicapua recommended that the customers purchase World Information stock.  Neither Sirianni nor Dicapua informed the investors that they were paid to create demand in World Information stock.

31.     Between August 25 and December 24, 2003, Sirianni's twelve customers purchased a total of 106,900 World Information shares.

32.     In addition to convincing his customers to purchase World Information stock, Sirianni used $66,740 of Dicapua's payment (which Dicapua received from Morgan) to purchase 21,500 shares of World Information stock in his own brokerage account between August 25 and December 19, 2003.

**D.   Morgan Profited By Selling World Information Stock**

33.     Between August 13, 2003, and January 13, 2004, while Morgan was World Information's CEO and Chairman, he sold 214,200 shares of World Information stock and thereby received approximately $551,000 in stock sales proceeds in various brokerage accounts under his direct control.  When Morgan sold these shares, he was in possession of material,

nonpublic information, including: Morgan's Group controlled a majority stock ownership of World Information; and after November 14, 2003, World Information did not have a firm commitment funding of $20 million.

34.     Morgan sold additional World Information stock through accounts controlled by a member of Morgan's Group.  On January 7 and 14, 2004, Morgan transferred a total of 80,000 shares of World Information stock to brokerage accounts controlled by this member.  Between January 8-16, 2004, at Morgan's direction and for his benefit, that member sold the 80,000 shares for approximately $315,000, and used those funds for Morgan's benefit.

**E.      Morgan Offered And Sold World Information Stock In Unregistered Offerings**

35.     During the time Morgan sold his World Information stock, no registration statement was in effect for the offerings of World Information securities and no exemption from registration existed.

**F.      Morgan Failed To File Timely Beneficial Ownership Disclosures**

36.     Throughout Morgan's tenure as CEO and Chairman of World Information, Morgan failed to file any disclosures of his beneficial ownership of World Information stock. Specifically, Morgan failed to disclose: (1) his acquisition, as part of a group, of a majority of the outstanding shares of World Information stock in his own name (and the names of his own nominees); and (2) his sales of World Information stock made while he was the company's CEO and Chairman.

**G.      World Information Is Delinquent In Filing Its Periodic Reports**

37.     World Information has not filed any periodic reports with the Commission since

August 2, 2004, when it filed a Form 10-K for the period ending December 31, 2003. World

Information has not made any filings terminating its reporting obligations under Section 12(g) of

the Exchange Act.

FIRST CLAIM FOR RELIEF
Violations of Section 17(a) of the Securities Act
(All Defendants)

38.    Paragraphs 1 through 37 are hereby realleged and incorporated by reference.

39.    All Defendants, and each of them, directly and indirectly, singly or in concert, in

the offer or sale of World Information securities, by use of the means or instruments of

transportation or communication in interstate commerce or by use of the mails, knowingly or

recklessly, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or

property by means of untrue statements of material fact or omissions to state material facts

necessary in order to make the statements made, in the light of the circumstances under which

they were made, not misleading; and (c) engaged in transactions, acts, practices and courses of

business which operated or would operate as a fraud or deceit upon purchasers of the securities

referenced above.

40.    As part of and in furtherance of this violative conduct, all Defendants, and each of

them, knowingly or recklessly engaged in some or all of the manipulative and fraudulent

transactions, acts, practices, and courses of business described above, including, among other

things: undisclosed kickback agreements to create demand in World Information stock and

insider trading by Morgan. These transactions, acts, practices, and courses of business operated

as a fraud or deceit upon investors who purchased the securities referenced above.

41.     By reason of the foregoing, all of the Defendants, and each of them, have violated, and, unless enjoined, will again violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

SECOND CLAIM FOR RELIEF
Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
(All Defendants)

42.     Paragraphs 1 through 37 are hereby realleged and incorporated by reference.

43.     All Defendants, directly and indirectly, singly and in concert, by use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly, have: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omissions of material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices and courses of business which operated or would operate as a fraud or deceit upon purchasers of the securities referenced above.

44.     As part of and in furtherance of this violative conduct, all Defendants, and each of them, knowingly or recklessly engaged in some or all of the manipulative and fraudulent transactions, acts, practices, and courses of business described above, including, among other things: undisclosed kickback agreements to create demand in World Information stock, insider trading by Morgan, false public filings by Morgan and World Information, and false press releases by Morgan and World Information.  These transactions, acts, practices, and courses of business operated as a fraud or deceit upon investors who purchased the securities referenced

above.

45.     By reason of the foregoing, all Defendants, and each of them, have violated, and, unless enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] thereunder.

THIRD CLAIM FOR RELIEF<br>Violations of Section 5(a) and 5(c) of the Securities Act<br>(Morgan)

46.     Paragraphs 1 through 37 are hereby realleged and incorporated by reference.

47.     Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] prohibit any person from offering or selling a security through interstate commerce unless a registration statement is in effect as to such offer or sale.

48.     During the time Morgan sold his World Information stock, no registration statement was in effect for the offer or sale and no exemption from registration existed.

49.     By reason of the foregoing, Morgan violated Section 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

FOURTH CLAIM FOR RELIEF<br>Violation of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder<br>(World Information)

50.     Paragraphs 1 through 37 are hereby realleged and incorporated by reference.

51.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-1 and 13a-13 [17 C.F.R.240.13a-1 and 240.13a-13] thereunder require issuers of registered securities to file with the Commission factually accurate annual and quarterly reports.  Exchange Act Rule 12b-20 [17 C.F.R. 240.12b-20] provides that in addition to the information expressly required to be

included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

52.    World Information filed false and misleading reports with the Commission. World Information's Forms 10-Q for the quarters ended June 30, 2003 and September 30, 2003 contained misleading information about Morgan and Morgan's Group's control over World Information stock, and false and misleading statements about World Information's funding opportunities. Furthermore, World Information failed to provide additional information necessary to make these statements made in the Forms 10-Q not misleading.

53.    By reason of the foregoing, World Information violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. 240.12b-20, 240.13a-1, and 240.13a-13] thereunder.

FIFTH CLAIM FOR RELIEF
Aiding and Abetting Violation of Section 13(a)
of the Exchange Act and Rules 12b-20 and 13a-13 thereunder
(Morgan)

54.    Paragraphs 1 though 37 are hereby realleged and incorporated by reference.

55.    Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] imposes liability upon "any person that knowingly provides substantial assistance" to another violator of the Exchange Act. During the relevant time period, as alleged herein, Morgan was World Information's CEO and Chairman, and actively participated in and controlled World Information's management and operations. Morgan signed World Information's filings and knew or was reckless in not knowing

15

that the filings contained false and misleading information.  Therefore, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Morgan is liable for aiding and abetting  World Information's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-13 [17 C.F.R. 240.12b-20 and 240.13a-13] thereunder.

56.    By reason of the foregoing, Morgan aided and abetted World Information's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-13 [17 C.F.R. 240.12b-20 and 240.13a-13] thereunder.

SIXTH CLAIM FOR RELIEF
Violation of Exchange Act Rule 13a-14
(Morgan)

57.    Paragraphs 1 though 37 are hereby realleged and incorporated by reference.

58.    Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] requires companies filing reports with the Commission to file reports that do not contain untrue statements of material fact or omit material facts necessary to make the statements made, in light of the circumstances in which they were made, not misleading.  Rule 13a-14 [17 C.F.R. 240.13a-14], requires the principal executive officer and principal financial officer of the company to sign a certification that the report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances in which such statements were made, not misleading.

59.    Morgan signed World Information's Forms 10-Q for the quarters ended June 30, 2003 and September 30, 2003, certifying the filings did not contain any untrue statements of material fact or omit to state a material fact necessary to make the statements made, in light of

the circumstances in which the statements were made, not misleading. These World Information

Forms 10-Q contained misleading statements about Morgan and Morgan's Group's control over

World Information stock, and false and misleading statements about World Information's

funding opportunities.

      60.    By reason of the foregoing, Morgan violated Rule 13a-14 of the Exchange Act [17

C.F.R. 240.13a-14].

SEVENTH CLAIM FOR RELIEF

Violation of Section 13(d) of the Exchange Act and Rules 12b-20, 13d-1 and 13d-2 thereunder
(Morgan)

      61.    Paragraphs 1 though 37 are hereby realleged and incorporated by reference.

      62.    Section 13(d) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13d-1 [17

C.F.R. 240.13d-1] thereunder require that any person or a group of persons that acquires directly

or indirectly, beneficial ownership of more than 5% of a company's class of stock registered

under Section 12 of the Exchange Act, must notify the issuer and the Commission within 10 days

of the acquisition. Exchange Rule 13d-2 [17 C.F.R. 240.13d-2] require that the person notify the

issuer and the Commission of any material increases or decreases in the percentage of beneficial

ownership. Exchange Act Rule 12b-20 [17 C.F.R. 240.12b-20] provides that in addition to the

information expressly required to be included in a statement or report, there shall be added such

further material information, if any, as may be necessary to make the required statements, in light

of the circumstances under which they are made, not misleading.

      63.    Throughout Morgan's tenure as CEO and Chairman of World Information,

Morgan failed to notify the Commission and omitted to disclose: his acquisition of, as part of

17

Morgan's Group's, 3.34 million of EZ Travel's 3.6 million outstanding shares; Morgan and

Morgan's Group's acquisition of 13.8 million shares of World Information stock issued in the

merger; and Morgan's sale of World Information stock made while he was CEO and Chairman

of World Information.

64.     By reason of the foregoing, Morgan violated and, unless enjoined, will continue to

violate Section 13(d) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13d-1 and

13d-2 thereunder [17 C.F.R. 240.12b-20, 240.13d-1, and 240.13d-2].

EIGHTH CLAIM FOR RELIEF

Violation of Section 16(a) of the Exchange Act and Rules 12b-20 and 16a-3 thereunder
(Morgan)

65.     Paragraphs 1 through 37 are hereby realleged and incorporated by reference.

66.     Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Rule 16a-3 [17

C.F.R. 240.16a-3] thereunder require that any person that directly or indirectly beneficially owns

more than 10% of a company's class of stock registered under Section 12 of the Exchange Act, or

who is an officer or director, shall notify the Commission within ten days after the person

becomes such beneficial owner, director, or officer.  Additionally, Section 16(a) of the Exchange

Act [15 U.S.C. § 78p(a)] requires that if there has been a change of such ownership during a

month, the reporting persons shall file with the Commission a statement indicating their

ownership at the end of the calendar month and the changes in that ownership that occurred

during the month.  Exchange Act Rule 16a-3 [17 C.F.R. 240.16a-3] requires that initial

statements of beneficial ownership be filed on Form 3, and that statements of changes in

beneficial ownership be filed on Form 4.  Exchange Act Rule 12b-20 [17 C.F.R. 240.12b-20]

18

provides that in addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

67.     As noted above, between August 12, 2003 and January 26, 2004, Morgan served as World Information's CEO and Chairman.  As such, he was obligated to file a Form 3 within ten days of becoming World Information's CEO and Chairman, and a Form 4 for any changes in his beneficial ownership.  However, Morgan failed to make any filings under Section 16(a) to conceal his ownership and sale of World Information stock from the investing public.  Morgan also failed to provide additional information necessary to make his omissions (his failure to file a statement of beneficial ownership and change in beneficial ownership of World Information stock), not misleading.

68.     By reason of the foregoing, Morgan violated and, unless enjoined, will continue to violate Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Rules 12b-20 and 16a-3 thereunder [17 C.F.R. 240.12b-20 and 240.16a-3]

NINTH CLAIM FOR RELIEF
Violations of Section 15(a)(1) of the Exchange Act
(Sirianni)

69.     Paragraphs 1 through 37 are hereby realleged and incorporated by reference.

70.     Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)] makes it unlawful for a broker to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security unless such broker is registered with the Commission or, in the case of a natural

person, is associated with a registered broker-dealer.  Section 3(a)(4) of the Exchange Act defines "broker" as any person engaged in the business of effecting transactions in securities for the account of others.

71.     Sirianni's receipt of undisclosed kickbacks to create additional demand for World Information stock by soliciting customer purchases fall outside the scope of his association with a broker-dealer and he therefore effected sales of World Information stock while not registered with the Commission.

72.     By reason of the foregoing,  Sirianni violated, and unless enjoined, will continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

I.

Enter a Final Judgment of Permanent Injunction permanently restricting and enjoining all Defendants, and each of them, and their agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the Final Judgment by personal service or otherwise, from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. 240.10b-5] thereunder.

II.

Enter a Final Judgment of Permanent Injunction permanently restricting and enjoining

20

World Information, and its agents, servants, employees, attorneys, and those persons in active concert or participation with it who receive actual notice of the Final Judgment by personal service or otherwise, from violating, directly or indirectly, Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. 240.12b-20, 240.13a-1, and 240.13a-13] thereunder.

### III.

Enter a Final Judgment of Permanent Injunction permanently restricting and enjoining Morgan, and his agents, servants, employees, attorneys, and those persons in active concert or participation with him who receive actual notice of the Final Judgment by personal service or otherwise, from violating, directly or indirectly, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)], Sections 13(a), 13(d), 16(a) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(d), and 78p(a)] and Rules 12b-20, 13a-13, 13a-14, 13d-1, 13d-2, and 16a-3 [17 C.F.R. 240.12b-20, 240.13a-13, 240.13a-14, 240.13d-1, 240.13d-2, and 240.16a-3] thereunder.

### IV.

Enter a Final Judgment of Permanent Injunction permanently restricting and enjoining Sirianni, and his agents, servants, employees, attorneys, and those persons in active concert or participation with him who receive actual notice of the Final Judgment by personal service or otherwise, from violating, directly or indirectly, Section 15(a)(1) of the Exchange Act [15 U.S.C. §78o(a)(1)].

### V.

Enter a Final Judgment ordering Morgan, Dicapua, and Sirianni to disgorge an amount

equal to the funds and benefits they obtained illegally as a result of the violations alleged herein, plus prejudgment interest.

## VI.

Enter a Final Judgment ordering Morgan, Dicapua, and Sirianni to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1] against Morgan.

## VII.

Enter a Final Judgment pursuant to Section 20(e) of the Securities Act [15 U.S.C. §77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)] permanently prohibiting Morgan from serving as an officer or director of any issuer that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. §78l] or that is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act [15 U.S.C. §78o(d)].

VIII.

Grant such other and further relief as the Court may deem just and appropriate.

Dated: November 14, 2006
      New York, New York

MARK K. SCHONFELD (MS-2798).
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center
New York, NY 10281
(212) 336-1020

Of Counsel:

    Helene Glotzer
    Gerald Gross
    Nancy A. Brown
    John P. Nowak
    Sheldon Mui